RICHARDSON, tax-collector, *v.* JOHNSON FURNITURE CO.

No. 8934.   NOVEMBER 18, 1932.

*Carter, Carter & Johnson,* for plaintiff in error.
*Hendrix & Buchanan,* contra.

BECK, P. J.   Johnson Furniture Company brought its petition against Richardson, tax-collector, to enjoin the collection of a special tax of fifteen per cent., levied under an amendment to the general tax act passed at the special session of the Georgia legislature in 1931 (Ga. L. Ex. Sess. 1931, p. 76), taxing all convict-made goods fifteen per cent. of the sale price, and requiring such goods to be marked or stenciled "convict-made."   The plaintiff alleged that it dealt in certain stoves and ranges manufactured in Nashville, Tenn.; that the articles so manufactured were made wholly or in part by prison or convict labor, and were shipped in the original packages from Tennessee; that plaintiff had sold a stove at the retail price of $39.50 on November 3, 1931; that the tax-collector had demanded fifteen per cent. of said sale price as the tax on the sale, and had issued a fi. fa. therefor, and was threatening to levy the fi. fa. on the property of petitioner.   The title of the act in question is as follows:   "An act to amend an act approved August 29, 1929 (Georgia Laws 1929, pages 58 to 76), amending an act approved August 25, 1927, known as the general tax act, to annually, in addition to the ad valorem taxes on real and personal property as now required by law, levy and collect taxes for the support of the State government and public institutions, and for other purposes, by striking from the said act approved August

29, 1929, certain paragraphs thereof, and substituting in their stead new paragraphs, so as to fix the kind and amount of certain taxes herein levied, to define and authorize the method of collection of specific and occupation taxes provided for in this act, to prescribe duties of officials in the collection thereof, and for the compensation therefor, to fix and define the manner of making returns for the payment of certain taxes, to provide penalties for violation of the provisions of this act; to amend an act approved August 22, 1929, known as the income-tax act; and for other purposes." Section 11 of the act is as follows: "There shall be added a sale tax of 15 per cent. of the retail price on all convict and/or prison-made goods sold within the State of Georgia; and all of said goods shall have marked on each article of every character, in plain view, the words 'convict-made.'"

On the interlocutory hearing the plaintiff introduced in evidence, beside the petition, an affidavit by J. W. Johnson, its president, in which he set out that the plaintiff made the sale of this particular cast-iron stove, which was purchased from Liberty Range Works and was made by convict labor; that the collection of the tax of fifteen per cent. would impose an unsurmountable burden on the goods of Liberty Range Works, or any other goods shipped into the State, if made by prison or convict labor, because it imposes an increased amount necessary in the sale of the articles, to compete with articles of like kind and character; that the tax of fifteen per cent. of the retail price will make it impossible for plaintiff to handle said article in competition with other articles of like kind and character; that if the stoves made by Liberty Range Works by convict labor are marked "convict-made," it will greatly impede the sale and desirability of the same for use by the public; and that such clear marking of the articles in this manner will prejudice the articles in the minds of the public to such an extent that a sale of them will be greatly retarded, if not almost made impossible.

In an affidavit by E. L. Rainey, chairman of the Prison Commission of Georgia, he stated that "there is not now, nor has there been, in the State of Georgia, for many years past any convict-made goods or prison-made goods produced and sold in the open market in the State of Georgia by its convicts in competition with other merchandise or goods of any kind, except that at times on the State prison farm in Baldwin County prisoners have been em-

ployed in the making of automobile license tags for the State of Georgia; that all prisoners in the State institutions and in the county chain-gangs are required to be employed in work other than that of producing merchandise or articles manufactured that come in competition with free labor." There was no evidence to show that any article of commerce or merchandise of any kind or character is produced or made by prisoners or convicts in the State of Georgia for sale to the public.

After hearing evidence, the court granted an interlocutory injunction, and the defendant excepted.

■ The plaintiff contends that the act of the legislature cited above violates paragraph 8 of section 7 of article 3 of the constitution of Georgia, which provides that "no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." We can not concur in this contention. The two acts referred to in the caption of the act which the plaintiff contends is unconstitutional both relate to the subject of taxation; they relate to kindred subjects. And an act imposing a sale tax of fifteen per cent. has a natural relation to both of the acts amended. While the subject-matter of the two acts is thus referred to, as a matter of fact the subject-matter is one; that is, the general subject-matter, and that is taxation.

■ Nor do we think that the act referred to is violative of article 1, section 8, paragraph 3, of the constitution of the United States, giving to Congress the power to regulate commerce with foreign nations, between the several States, and among the Indian tribes. In their brief, counsel for defendant in error quote from several cases, and from one in particular the quotation is very lengthy. Arnold v. Yanders, 56 O. St. 417 (47 N. E. 50, 60 Am. St. R. 753), in which an act of the legislature of Ohio was held to be unconstitutional. But the great difference between that case and this is that there was a tax or duty imposed by the act there in question upon goods when imported from another State, and that it should not affect products of the prisoners of the State of Ohio; and a provision like that did make the act one regulating commerce between States; and the legislature was without power to pass an act affecting commerce between States, for it amounted to an attempt to exercise power which belongs to Congress alone; and

the Supreme Court of Ohio said the act in question was not a police regulation, but an attempt to prevent or at least discourage the importation of convict-made goods from other States. Other cases are cited and quoted from in the brief of counsel for defendant in error, but it is unnecessary for us to set forth here the arguments from any of those authorities; they do not apply to this case. Here the tax is upon the sale of convict-made goods, and the act does not discriminate between goods made in this State and goods made in other States, and therefore it is not an attempt to regulate commerce between the States.

It is insisted that the act attacked in this case falls within the same class as those cases to which we have referred, and in which the acts were held unconstitutional; because there are no convict-made goods in this State offered for sale. We do not think this makes any difference; because the act stands written so that it would affect any convict-made goods that might be offered for sale, if any manufactured in this State should be placed upon the market. For these reasons we think the court erred in granting this injunction; for there was no other ground for granting it except the alleged unconstitutionality of the act in question.

*Judgment reversed. All the Justices concur.*